# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 11-CR-0187-CVE |
| | ) | |
| JANICE MORA ADAMS, | ) | |
| previously named as | ) | |
| Janice M. Adams, | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is the Victim's Petition for Amended Restitution Order (Dkt. # 46).

People's Bank (the Bank) argues that the Court failed to award it sufficient restitution to make it

whole for the losses caused by defendant's conduct, and it asks the Court to enter an amended

restitution order. The United States has filed a response stating that the Bank had notice before the

sentencing hearing of the amount of restitution it would be awarded, and the Court made no error

when determining the total amount of restitution or the distribution of the restitution among the

various recipients. The United States also asks the Court to find that the Bank's petition is untimely.

## I.

On December 30, 2011, the United States Attorney for the Northern District of Oklahoma

filed an information charging defendant Janice Mora Adams with one count of misapplication of

financial institution funds under 18 U.S.C. § 656 (Dkt. # 2). Adams was the Senior Vice President

for Private Banking and served as an internal control officer for the Bank, and the information

alleged that the Bank suffered a loss of $3,020,136.36 due to Adams' misapplication of Bank funds.

On January 19, 2012, an amended information (Dkt. # 6) was filed and Adams faced an additional

charge of willfully submitting a false federal income tax return.  Adams waived indictment, and on February 28, 2012, she pled guilty pursuant to a plea agreement to both charges in the amended information.

Adams' plea agreement included a restitution agreement and the Bank assisted plaintiff's counsel with preparation of the restitution agreement.  On January 24, 2012, the Bank's chairman, David Johnson, advised Assistant United States Attorney Charles McLoughlin that the Bank had incurred over $270,000 in accounting and legal fees for which it had not been compensated.  Dkt. # 48-1.  McLoughlin states that "there had been numerous telephonic, in person, and written communications between [the Bank], [Johnson], and [the Bank's] counsel, Michael James King and the United States as to what losses the [B]ank had sustained which would qualify for restitution in such an agreement."  Dkt. # 48, at 3. The plea agreement states that the Bank's insurer, Federal Insurance Company (Federal Insurance), was owed $3,025,000 and that the Bank was owed $270,042.54.  Dkt. # 18, at 6.  Based on the figures stated in the plea agreement, there was a computation error and the correct amount of restitution owed to the Bank was $274,042.54.[1] However, when the restitution agreement was prepared, the United States was unaware that the Bank had received a $270,000 settlement from Continental Casualty Company (Continental Casualty) to resolve the Bank's claims against Continental Casualty's insured, the accounting firm Sewell & Taylor, LLP (Sewell & Taylor), for its alleged negligence in failing to discover Adams' theft during outside audits of the Bank.  Dkt. # 48-5, at 8.  In fact, the Bank did not disclose this information to the United States, and the United States did not learn of the settlement until July 9, 2012, when

---

[1]     The losses for which the Bank was not compensated by insurance were a $25,000 insurance deductible, $195,698.54 in accounting fees, and $53,344 in legal fees.  Dkt. # 18, at 6.

Federal Insurance's attorney advised the United States that it had received $730,000 and the Bank had received $270,000 in a settlement with Sewell & Taylor's liability insurer, Continental Casualty. The settlement agreement among the Bank, Continental Casualty, and Federal Insurance had been executed on November 11, 2011. Dkt. # 48-5, at 10.

On July 17, 2012, the United States contacted the probation officer who had prepared the presentence investigation report (PSR), and advised the probation officer that the restitution award stated in the PSR would have to be revised in light of the Bank's and Federal Insurance's settlement with Continental Casualty. Dkt. # 48-4. The PSR was revised to reduce the amounts of restitution owed to Federal Insurance and the Bank, and Continental Casualty was to be awarded $1,000,000 in restitution. The Bank's attorney, King, had maintained contact with the United States Attorney's office, and King sent an e-mail to McLoughlin and the probation officer asking if Adams would receive "credit" for Continental Casualty's payment to the Bank. Dkt. # 48-7. King also asked to see a copy of the proposed restitution award before the sentencing hearing. McLoughlin responded to King by e-mail and explained that the total amount of restitution would not be reduced, but the amounts of restitution owed to the Bank and Federal Insurance would be reduced and Continental Casualty would be added as a payee for the amount of the settlement. Dkt. # 48-8. McLoughlin offered to meet with King and Johnson to discuss the award of restitution, but McLoughlin advised them that he could not provide them with a copy of the PSR. Id. Neither King nor Johnson requested to meet with McLoughlin before the sentencing hearing.

Adams' sentencing hearing was held on July 30, 2012. At the beginning of the sentencing hearing, the Court inquired whether any victims were present and wished to be heard, and counsel for the United States advised the Court that Johnson was present. However, Johnson did not wish

3

to make a statement at the sentencing hearing. The Court announced the total amount of restitution, and stated that a breakdown of the amounts owed to different parties was included in the PSR. The total amount of restitution awarded was $4,158,516.54, and the Bank was awarded $4,042.54. Federal Insurance was awarded $2,295,000 and Continental Casualty was awarded $1,000,000, and the remainder of the restitution was owed to the Internal Revenue Service. Dkt. # 37, at 5. McLoughlin, Assistant United States Attorney Catherine Depew, and federal agents met with Johnson and his family for approximately 45 minutes after the sentencing hearing, but Johnson posed no questions concerning the amount of restitution awarded to the Bank. Dkt. # 48, at 6. On August 1, 2012, Continental Casualty provided information to the United States Attorney's office for the processing of any restitution payments by defendant, and Johnson and King received a copy of this e-mail. Dkt. # 48-12. Neither Johnson nor King raised any objection to payment of restitution to Continental Casualty. On August 8, 2012, the victim witness coordinator for the United States Attorney's office sent a letter to Johnson and Bill Burnett, president and chief operating officer of the Bank, explaining Adams' punishment and plainly stating that the Bank would be entitled to receive $4,042.54 in restitution. Dkt. # 48-9; Dkt. # 48-10. On September 21, 2012, the Bank requested and received a copy of the judgment and commitment, and the Bank claims that this was the first notice it had that it would be awarded less than $274,042.54 in restitution. Dkt. # 46, at 2.

## II.

The Bank claims that it was unaware until September 21, 2012 that the amount of its restitution award had been reduced based on the settlement with Continental Casualty, and it filed this petition within 60 days of its discovery that it would not receive restitution for the full amount

of the loss caused by Adams' conduct. Dkt. # 46. The Bank also argues that the restitution order

should be amended to correct the order of priority, because a victim is entitled to receive restitution

before a "provider of compensation." Dkt. # 54, at 5-6. The United States has filed a response

stating that amount of restitution and the distribution of that restitution between the payees was

correct, and the Bank's petition is untimely. Dkt. # 48.

The first issue the Court must consider is whether there is any statutory authority permitting

the Court to amend the restitution order. Restitution is part of a criminal judgment, and the general

rule is that a district court may not alter or amend a criminal judgment absent express statutory

authority. United States v. Dando, 287 F.3d 1007, 1010 (10th Cir. 2002); United States v.

Blackwell, 81 F.3d 945, 948-49 (10th Cir. 1996). The Bank cites 18 U.S.C. § 3664(d)(5), which

states that:

> If the victim's losses are not ascertainable by the date that is 10 days prior to
> sentencing, the attorney for the Government or the probation officer shall so inform
> the court, and the court shall set a date for the final determination of the victim's
> losses, not to exceed 90 days after sentencing. If the victim subsequently discovers
> further losses, the victim shall have 60 days after discovery of those losses in which
> to petition the court for an amended restitution order. Such order may be granted
> only upon a showing of good cause for the failure to include such losses in the initial
> claim for restitutionary relief."

The Bank argues that it "discovered" that the amount of restitution awarded to it was incorrectly

reduced and it filed this petition within 60 days of this discovery, and its petition should be deemed

timely under § 3664(d)(5).

The Bank's reliance on § 3664(d)(5) is misplaced. The Tenth Circuit has clearly held that

§ 3664(d)(5) applies only when there is some dispute concerning the amount of the victim's losses

and it is not possible to enter the restitution order at the time of a defendant's sentencing. United

States v. Bedonie, 413 F.3d 1126, 1129 (10th Cir. 2005); see also United States v. Long, 369 Fed.

App'x 992, 995 (11th Cir. Mar. 25, 2010) (section 3664(d)(5) is triggered only when the district court defers entry of restitution order to properly calculate the victim's loss). In this case, the amount of the Bank's loss was clearly ascertainable at the time of defendant's sentencing and the Court ordered restitution for the full amount of the Bank's loss. The Bank now disputes the distribution of payment among the Bank and other parties who have suffered losses because of defendant's conduct. However, the Court did not defer entry of the restitution order and § 3664(d)(5) does not apply, and the Court lacks the authority to amend the restitution order in these circumstances. In any event, the Bank has not shown good cause for entering an amended restitution order. The record is clear that McLoughlin advised the Bank before the sentencing hearing that its restitution would be reduced based on the settlement with Continental Casualty, and the Bank failed to raise any argument in opposition to this reduction to McLoughlin, the probation officer, or the Court. The Bank also received notice of the amount of restitution from the United States Attorney's office shortly after the sentencing hearing, and the Bank did not notify McLoughlin or the Court of any error in calculating the restitution owed to the Bank until over two months after the sentencing hearing. The Bank argues that there may have been a "miscommunication" between it and the United States Attorney's office, and its failure to challenge the restitution award in a timely manner should be excused. Dkt. # 54, at 3. There is no evidence of "miscommunication" but, instead, it is apparent that the Bank had notice before and after the sentencing hearing of the amount of its

restitution award and it neglected to act in a timely manner. This does not constitute good cause for entry of an amended restitution order.[2]

Even if the Court could reach the merits of the Bank's petition, the Court would not find any basis to amend the restitution order. The Bank argues that the $270,000 it received from Continental Casualty was intended to compensate the Bank for Sewell and Taylor's negligence in failing to detect defendant's embezzlement of bank funds. Dkt. # 54, at 2. The Bank categorizes this as a separate loss from the theft of bank funds by defendant, and it argues that the amount of the settlement should not have subtracted from its restitution award. The Court disagrees. The root cause of the Bank's claims against Sewell & Taylor was defendant's theft of bank funds, and the Bank would have had no claim against Sewell & Taylor but for defendant's conduct. Thus, the $270,000 settlement with Continental Casualty can reasonably be construed as "compensation from insurance or any other source with respect to a loss," and the provider of compensation, rather than the Bank, was properly awarded restitution to compensate it for a settlement payment made to the Bank as a direct result of defendant's conduct. See 18 U.S.C. § 3664(j)(1).

**IT IS THEREFORE ORDERED** that the Victim's Petition for Amended Restitution Order (Dkt. # 46) is **denied**.

**DATED** this 11th day of January, 2013.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[2]     Due to the Court's finding that the Bank's petition is not authorized under § 3664(d)(5), the Court also declines to consider the Bank's argument that the restitution award should be amended to alter the order of priority among the recipients of any restitution paid by defendant.

7